STATE

v.

**Joseph HADRICK.**

No. 86–66–C.A.

Supreme Court of Rhode Island.

April 6, 1987.

442

James E. O'Neil, Atty. Gen., Thomas M. Dickinson, Sp. Asst. Atty. Gen., Providence, for plaintiff.

William P. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Joseph Hadrick (Hadrick), was convicted by a Superior Court jury of one count of robbery in violation of G.L.1956 (1981 Reenactment) § 11–39–1. After denying Hadrick's motion for a new trial, the trial justice sentenced Hadrick to forty years in prison, with thirty years to serve at the Adult Correctional Institutions and ten years suspended. Hadrick now appeals.

On the night of June 19, 1984, Roberta Shannon (Shannon) was working as a cashier at a Cumberland Farms store on Broad Street in Cranston. Shannon was on summer break from her studies at Columbia University in New York City. She was the only employee on duty that night. Shannon testified at Hadrick's trial that shortly before 7 p.m. a man, later identified as Hadrick, entered the store. There were several other customers in the store at that time. Within five to ten minutes, all customers had left the store except Hadrick. Shannon testified that she then looked at Hadrick for two to three minutes, hoping that this would encourage Hadrick to make his purchases quickly so that she could tend to other duties in the store. Hadrick was approximately fifteen to twenty feet away from her at this time. Hadrick then approached the cash register and leisurely fingered some items. He asked Shannon the prices of various items, and Shannon began to ring up the purchases. At that moment, Hadrick told Shannon that this was a holdup and that he had a weapon. Hadrick then reached into the cash register, took the money that was in the register, and fled.

After the robbery, Shannon was taken to the Cranston police station where she gave a description of the robber and looked at several books of mug shots.

Several days later, Shannon was taken to Providence police headquarters by members of the Cranston police for a lineup viewing of a suspect the Providence police department had in custody in an unrelated incident. Shannon was able to identify the suspect Hadrick from the lineup as the person who had robbed her.

Prior to trial the defense moved to suppress Shannon's identification of Hadrick at the police station lineup on the grounds that the lineup was impermissibly suggestive and because the lineup was the product of the unlawful arrest of Hadrick. At the close of the evidence at the suppression hearing, the trial justice granted the defense motion to suppress the lineup identification, ruling that it was the product of an arrest based on an invalid arrest warrant.[1] The trial justice ruled, however, that Shannon's in-court identification would not be suppressed because the lineup was not suggestive and that there was an independent basis for the in-court identification.

The defense assigns as error the trial justice's decision not to suppress the in-

---

1. The arrest warrant, introduced into evidence at the suppression hearing, was not signed by the issuing judge until after Hadrick had already been arrested.

court identification of Hadrick. Hadrick argues that the police station lineup was suggestive because none of the lineup participants except Hadrick even remotely resembled the description of the robber given to the police by Shannon. Hadrick also notes that Shannon understood that the suspect was in the lineup, thereby encouraging Shannon to make an identification. He contends that despite the suggestiveness of the lineup, not only did Shannon not identify him immediately but she also took five minutes to make the identification. The suggestive nature of the lineup, argues Hadrick, combined with a very quick robbery seen by an admittedly nervous witness should indicate that the in-court identification was tainted and should therefore have been suppressed.

■ The United States Supreme Court has held that when a pretrial identification is suppressed, the in-court identification is not excluded per se unless the prosecution fails to establish by clear and convincing evidence that the in-court identification was based upon observation of the suspect other than during the pretrial identification. *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165 (1967). This court has expressed the *Wade* rule as requiring that the in-court testimony rest "upon a source independent of the [tainted] identification." *State v. Byrnes*, 433 A.2d 658, 664 (R.I.1981). *See also State v. Souza*, 110 R.I. 261, 292 A.2d 214 (1972). The *Byrnes* court set forth factors that a trial justice should consider in determining whether the in-court identification is independent of the pretrial identification. The trial justice may consider

"(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation." *Id.* at 665 (citing

*Manson v. Brathwaite*, 432 U.S. 98, 114–15, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977)).

The trial justice must therefore determine whether the pretrial identification was improper and, if so, whether the witness's in-court identification is sufficiently independent that it may be admitted despite the taint of the improper pretrial identification.

The trial justice, after conducting an extensive pretrial evidentiary hearing, made the following factual findings regarding Shannon's testimony:

"[The Court:] So that her opportunity for observation was excellent. The Court was impressed with her apparent intelligence and her apparent ability to relate what she saw here and was, in general, convinced beyond any question that she was the kind of a person who would be able to remember a person's face.

I am satisfied here that when she went to the police station, even long before the lineup and gave the description and then assisted in the setting together or putting together of a picture composition of the alleged robber, that she had at that time in her brain a branded image of the alleged robber. In her brain was branded that imprint, that identification of the person who had committed the robbery."

■ The foregoing factual finding demonstrates that the trial justice was convinced that Shannon's in-court identification of Hadrick flowed from a source independent of the police station lineup. Thus, the question of whether the lineup was impermissibly suggestive need not be addressed because the trial justice found that the in-court identification flowed from an independent source.[2]

Hadrick's final issue of appeal concerns the jury instruction given by the trial justice. Hadrick argues that (1) the trial justice failed to caution the jury with regard to the cross-racial identification and (2) the

**2.** A photograph of the lineup was lost sometime prior to this appeal. The defendant argues that this loss warrants a new trial because he has been denied adequate review of the record. We fail to see the prejudice to defendant arising from the lost photograph. At best the photograph would show that the lineup was impermissibly suggestive. As discussed above, that alone does not warrant suppression of the in-court identification.

court's reasonable-doubt instruction was biased in favor of conviction.

■ It is important at the outset to note the standard this court applies when reviewing jury instructions. When the alleged error involves a portion of the charge, an appellant will not be permitted to take a single sentence out of context to show an incorrect statement of law. *State v. Lambert*, 463 A.2d 1333, 1338 (R.I.1983). Instead, this court reviews the jury charge in its entirety to determine its correctness. *Id.* The inquiry is designed to determine "how a jury composed of ordinarily intelligent persons listening to that instruction at the close of a trial would have appreciated the instructions as a whole." *State v. Cipriano*, 430 A.2d 1258, 1262 (R.I.1981). Furthermore, this court recognizes the authority of the trial justice to "charge the jury in his own words as long as he states the applicable law." *State v. Lambert*, 463 A.2d at 1338.

■ Hadrick contends that the trial justice should have instructed the jury on the alleged inherent weakness of cross-racial identifications.[3] For support of this proposition, defendant relies on the concurring opinion of then-Chief Judge Bazelon in *United States v. Telfaire*, 469 F.2d 552, 561 (D.C.Cir.1972) (Bazelon, C.J., concurring), where Bazelon proposed a model instruction on the issue of cross-racial identification.[4] Hadrick proffered an instruction using a portion of Bazelon's proposed charge. This was rejected by the trial justice, who declined to instruct on the cross-racial issue.

We find no error in the trial justice's decision to reject Bazelon's proposed instruction. The Bazelon instruction can be properly characterized as comment by the

trial justice on the nature and quality of a specific type of evidence and not, as defendant asserts, an instruction based upon firm scientific evidence. As commentary on the evidence, the proposed instruction runs counter to the view expressed by this court recently in *State v. Olink*, 507 A.2d 443 (R.I.1986), and *State v. Fenner*, 503 A.2d 518 (R.I.1986). In both *Olink* and *Fenner* we stated that a trial justice should avoid reciting instructions that might be construed as commentary on the quality or credibility of particular evidence. As stated by the *Fenner* court, "[c]ounsel rather than the court are the appropriate agents to argue to the jury concerning the specific credibility or lack thereof of a particular witness." *State v. Fenner*, 503 A.2d at 525. Other jurisdictions have voiced similar sentiments with regard to the Bazelon instruction. *See United States v. Ingram*, 600 F.2d 260, 263 (10th Cir.1979) ("more in the realm of argument than law"); *Abney v. United States*, 347 A.2d 402, 403 (D.C. Ct.App.1975) ("a jury instruction is not the place for questionable generalizations highlighting what may or may not reflect one type of individual's recall capacity"); *see also People v. White*, 58 Ill.App.3d 226, 227–28, 15 Ill.Dec. 815, 816, 374 N.E.2d 250, 251 (1978); *State v. Allen*, 301 N.C. 489, 495, 272 S.E.2d 116, 120 (1980).

■ Hadrick's second claim that the trial justice erred when he explained the term reasonable doubt to the jury is totally unpersuasive.

The single but critical issue to be determined by the jury was whether the state had proved beyond a reasonable doubt that the individual who had spent considerable time within the store, approached the clerk, and subsequently announced that this was a holdup was Hadrick.

---

**3.** The victim of the robbery, Roberta Shannon, is white. The defendant is black.

**4.** This is the proposed model instruction of Chief Judge Bazelon:

"In this case the identifying witness is of a different race than the defendant. In the experience of many it is more difficult to identify members of a different race than members of one's own. If this is also your own experience, you may consider it in evaluating

the witness's testimony. You must also consider, of course, whether there are other factors present in this case which overcome any such difficulty of identification. For example, you may conclude that the witness has had sufficient contacts with members of the defendant's race that he would not have greater difficulty in making a reliable identification." *United States v. Telfaire*, 469 F.2d 552, 561 (D.C.Cir.1972) (Bazelon, C.J., concurring).

The trial justice explained to the jury that the term "reasonable doubt" refers to a doubt based upon the evidence or the lack of evidence, but it does not mean a fanciful doubt or a possible doubt. He said that "a reasonable doubt must be an actual doubt founded in reason that remains in your mind after you have fairly and impartially and thoroughly evaluated all of the evidence that has been brought before you." The jury was further informed that if after considering "all of the evidence and all of the reasonable inferences that you can draw from that evidence * * * there remains in your mind an abiding opinion amounting to a moral certainty that the defendant is guilty of the offense, as I have defined that offense for you, then the State has proven its case beyond a reasonable doubt, and it will then become your civic duty to return a verdict of guilty."

Following these remarks the trial justice then told the jurors that if, on the other hand, they were uncertain about any one element of the offense as it had been defined, it would be their civic duty to return a not-guilty verdict.

The trial justice's explanation is based on the charge approved by this court in *State v. Thorpe*, 429 A.2d 785, 790 (R.I.1981). We believe that the trial justice properly informed the jury of the standards by which it was to determine Hadrick's guilt or innocence.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.