STATE

v.

**Francis L. FEROLA, Jr.**

No. 86–363–C.A.

Supreme Court of Rhode Island.

Dec. 1, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the defendant from a judgment of conviction of murder in the first degree entered in the Superior Court. We affirm. The facts of the case insofar as pertinent to this appeal are as follows.

On October 16, 1983, a twenty-five-year-old woman, Anita Medeiros, was discovered dead on her bathroom floor. She was

nude, her hands were tied behind her back with a bathrobe cord. The body was found by a patrolman of the East Providence police department. The officer's testimony disclosed that a beige shirt was tied around the victim's head and a portion thereof stuffed into her mouth. Another shirt had also been stuffed into the woman's mouth and throat. The bathroom where she was found was located in a trailer in which the victim had resided along with her parents.

The medical examiner, Stephen Blair, M.D., a forensic pathologist, performed an autopsy on October 17, 1983. He expressed the opinion that Ms. Medeiros had died as a result of strangulation and asphyxiation. On October 29, 1983, defendant, Francis L. Ferola, Jr. (Ferola), gave a statement to the East Providence police. In this statement Ferola asserted that he had been invited into the trailer shortly after midnight on October 16, 1983. He stated that the victim had removed her nightgown and asked him to tie her hands behind her. He also admitted gagging her because, he stated, she had become very noisy in the past during sexual intercourse. He further stated that he slapped her as part of their accustomed practice but apparently slapped her too hard so that she ran to the bathroom. The defendant then stated that he pushed the bathroom door inward and this movement of the door accidentally caused her to fall and strike her head. Although defendant did not testify, the theory of defense counsel based on the terms of this statement, was that death was caused by the fall. The medical examiner stated that in his opinion the death of the victim was not related to her head injuries but solely to asphyxiation and strangulation.

In support of his appeal, defendant raises four issues. These issues will be considered in the order in which they are raised in defendant's brief.

## I

### THE TRIAL JUSTICE'S INSTRUCTIONS IN RESPECT TO INVOLUNTARY MANSLAUGHTER

Although defendant did not testify at his trial, the statement which he gave to the East Providence police indicated that the victim's death had been the result of her falling and hitting her head. In effect, the trial justice instructed the jurors that they could find that the crime of involuntary manslaughter was committed only in the event that they "disbelieve[d] the testimony of Doctor Blair as to the cause of death, and [further believed] the statement of the defendant as to how it happened, then [they could] consider the question of whether it was involuntary manslaughter, or whether the defendant is not guilty of any crime."

The defendant contends that this instruction to the jury invaded the province of the triers of fact and shifted the burden of proof, contrary to the requirements laid down by the Supreme Court of the United States in *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). There is no question that the foregoing cases stand for the proposition that the state must bear the burden of proof in respect to all elements of the crimes charged, by a quantum of evidence amounting to proof beyond a reasonable doubt. There may be no shifting of this burden by presumptions either conclusive, as in *Sandstrom*, or even rebuttable as discussed in *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979). In the case at bar, the trial justice clearly instructed the jury that the state bore the burden of proof on all issues. He described the elements of the crimes of murder in the first degree, murder in the second degree, and involuntary manslaughter. At no point did he advert to any presumption. He was, however, faced with the task of instructing the jury in regard to diametrically opposed testimony on the part of the medical examiner and a written statement made by defendant in which he had set forth the following. "After I tied her up I gagged her mouth with a shirt which was tied around her head. The reason for this

was Anita gets carried away and she didn't want anyone to hear her scream. We had regular intercourse and anal sex and she also performed oral sex on me. I also had oral sex with her. This all took place in the bedroom, this entire lovemaking went on for approximately thirty minutes. After we had the sex she popped up off the bed and began laughing and ran to the bathroom. I chased Anita to the bathroom and she closed the door. She had her back up against the bathroom door. I pushed the door in and Anita lost her balance and fell on her face on the bathroom floor. I seen Anita was not moving and I rolled her over on her back and I tried slapping her on the face to wake her up. When she didn't respond I got scared and then washed my hands in the bathroom sink."

The foregoing statement was not consistent with a death caused by strangulation and asphyxiation. It is irrational to suggest that a gag that would allow the victim to participate in oral sex and other types of intercourse for approximately thirty minutes, then pop off the bed laughing and run to the bathroom, could cause death by asphyxiation and strangulation after a fall.

■ A criminal defendant is not entitled to an irrational verdict. *See State v. Amazeen*, 526 A.2d 1268, 1272 (R.I. 1987); *Jefferson v. State*, 472 A.2d 1200, 1203 (R.I. 1984); *State v. Kaner*, 463 A.2d 1348, 1351 (R.I. 1983).

■ We have frequently stated that a trial justice's instruction to the jury must be considered as a whole and not in segmented portions. *State v. Hadrick*, 523 A.2d 441, 444 (R.I. 1987); *State v. Gordon*, 508 A.2d 1339 (R.I. 1986); *State v. Desmarais*, 479 A.2d 745 (R.I. 1984). If this charge is considered as a whole, in accordance with our prior cases, it becomes clear that the trial justice accurately instructed the jurors concerning the charge of murder in the first degree and the lesser included offenses of second-degree murder and involuntary manslaughter. He indicated to the jury that the task of factfinding was solely within their province. It is true that he told the jurors that in order to find involuntary manslaughter (or no crime at all), relying upon defendant's written statement, it was necessary for them to disbelieve the medical examiner, whose opinion was unequivocal that death was caused by strangulation and asphyxiation as opposed to falling. He further told them that in order to adopt defendant's statement, they must believe his version of the events leading to the victim's death. The trial justice, in so instructing the jurors, was not invading their province but was guiding them in the process of reasoning that would be necessary to reach a rational determination of fact.

A trial justice's instruction to the jury is not a mere abstract formulation of principles of law. He or she has the difficult task of instructing a group of lay persons on the principles of law applicable to the facts of the case as the jurors find those facts to be. In the case at bar, the trial justice attempted to perform this task in such a fashion that the average intelligent lay person on the jury would be able to perform his or her awesome duty in a rational manner in light of the facts that had been presented to them. He was not in error in stating to the jury that defendant's theory or statement was not reconcilable with the findings of the medical examiner. In observing to the jurors that they could not accept one without rejecting the other, he was not invading the province of the finders of fact but only attempting to assist them to reach a reasonable and intelligent determination on the evidence presented. To suggest that the medical examiner's testimony was not contradictory to defendant's statement would be both absurd and irrational. Neither the trial justice nor the jury had any obligation or duty to reach such a result.

In the circumstances of this case, we are of the opinion that the trial justice did not commit an error in pointing out to the jury that defendant's statement, in effect, could not be reconciled with the opinion of the medical examiner. He did not shift to defendant the burden of proof on any issue and did not suggest that the jury could rely on any presumption. His instructions on the obligation of the state to prove beyond

a reasonable doubt each and every element charged in the indictment was correct in law.

## II

## THE QUALIFICATION OF THE MEDICAL EXAMINER

■ The defendant argues that Dr. Stephen Blair was not qualified to testify as an expert, even though he had performed an autopsy upon the deceased victim. There seems to be no question that Dr. Blair was a 1976 graduate of the medical school of the University of Guadalajara in Mexico. Thereafter he served a year of internship at the Kaiser Foundation Hospital at Harbour City, California. He performed a one-year residency in rehabilitative medicine in Texas. He received training in pathology at the Kaiser Foundation and thereafter at institutions in San Francisco and San Jose. During the latter period he was engaged in "pure anatomic pathology," which involved a "lot of autopsy work."

Upon his arrival in Rhode Island, Dr. Blair became associated with the Rhode Island medical examiner's office as an associate medical examiner. During the year 1983, he performed approximately 150 autopsies. (During this period, Dr. Blair worked under the supervision of the Chief Medical Examiner, Dr. William Q. Sturner, but performed those 150 autopsies unassisted.)

■ In spite of a vigorous cross-examination by counsel for defendant, the trial justice determined that Dr. Blair was competent to testify as an expert witness. We have steadfastly adhered to the principle that the qualification of an expert witness to testify and the scope of his or her testimony are issues that are left to the sound discretion of the trial justice. His or her ruling on this issue will not be set aside unless a clear abuse of discretion is shown. *State v. Villani*, 491 A.2d 976, 978–79 (R.I. 1985); *State v. Ashness*, 461 A.2d 659, 670 (R.I. 1983).

We believe that allowing the testimony of a medical examiner who is a graduate of a recognized medical school (though not located in the United States), and who has served a considerable period of internship and residency in pathology at institutions within this country, and who was entrusted with the performance of approximately 150 autopsies during the year 1983, could scarcely be described as an abuse of discretion. The considerations raised in cross-examination could only affect the weight and not the admissibility of such testimony.

## III

## THE COURT'S INSTRUCTIONS ON REASONABLE DOUBT

■ The defendant argues that the trial justice erred in his definition of the concept of proof beyond a reasonable doubt. The challenged portion of the instruction reads as follows:

"Now as I indicated to you, in order for you to find the Defendant guilty in this case, the State must prove to you his guilt beyond a reasonable doubt, and the State has to prove all the essential elements of each crime that I have enumerated for you, and that the Defendant committed a particular crime. Now you'll notice that I said to you, you have to find beyond a reasonable doubt. I didn't say beyond all doubt or beyond a shadow of a doubt. It is virtually impossible to prove anything beyond all doubt. All that the law requires is that the State prove its case beyond a reasonable doubt.

"Well, then, what is a reasonable doubt? A reasonable doubt is a doubt founded in reason, a doubt to which you can assign a *logical and sound reason* and not a doubt arising out of whimsy or caprice." (Emphasis added.)

The defendant bases his objection, at least in part, upon our opinion in *State v. Thorpe*, 429 A.2d 785, 790 n.4 (R.I. 1981). In that case, we stated that "trial justices, in discussing the reasonable-doubt doctrine, shall omit any reference to 'substantial doubt.'" *Id.* We also stated in the body of the opinion in *Thorpe* that the trial justice was not in error when he referred to a reasonable doubt as "doubt based upon

reason," particularly when that definition was combined with the instruction that reasonable doubt must be based on evidence or lack of evidence. *Id.* at 790. In the case at bar, the trial justice did not use the term "substantial doubt." This charge was more akin to the instructions considered in *State v. Hadrick,* 523 A.2d 441 (R.I. 1987), in which we evaluated an instruction that included the clause "a reasonable doubt must be an actual doubt founded in reason that remains in your mind after you have fairly and impartially and thoroughly evaluated all of the evidence that has been brought before you." *Id.* at 445.

We held that this language, in the context of an entire charge relating to reasonable doubt, properly informed the jury of the standard by which it was to determine defendant's guilt or innocence. *Id.*

In considering the charge given in the case at bar, we are of the opinion that it did not, subtly or otherwise, shift the burden of proof to defendant. This instruction reasonably comports with standards which we expressed recently in *State v. Hadrick, supra,* and in *State v. Thorpe, supra.* Consequently, the trial justice did not err in the manner in which he defined "reasonable doubt" in the context of his entire charge. *See Robinson v. Callahan,* 694 F.2d 6 (1st Cir. 1982); *Tsoumas v. New Hampshire,* 611 F.2d 412 (1st Cir. 1980).

## IV

## THE ADMISSIBILITY OF DEFENDANT'S STATEMENT TO THE EAST PROVIDENCE POLICE

▪ The defendant argues that the statement which he gave to the East Providence police on October 29, 1983, pursuant to interrogation, was the fruit of an illegal arrest and, therefore, inadmissible. In *State v. Ferola,* 518 A.2d 1339 (R.I. 1986), Ferola raised the identical argument relating to his statement to the East Providence police in attempting to challenge the admissibility of a statement which he later gave to the Warwick police in connection with another homicide.

We considered this argument in the prior case and concluded in respect to defendant's presence at the East Providence police station:

"[N]one of the evidence presented demonstrates that Ferola's voluntary entry into the East Providence police station at approximately 7:15 p.m. was later that evening transformed into an arrest prior to his confession. In view of his other recent meetings with the East Providence police as well as his four meetings with the Warwick police, it is not unreasonable to conclude that Ferola continued to believe that he was free to leave. Accordingly, we find that Ferola's liberty was not so curtailed as to constitute an arrest." 518 A.2d at 1344.

It should also be noted that in the same case we acknowledged the fact that on Friday, October 28, 1983, a secret indictment had been issued against Ferola by a Providence County grand jury in relation to a charge of rape in a separate case. A warrant for Ferola's arrest was issued the same day. Consequently, the East Providence police had every right to arrest Ferola pursuant to the warrant, but declined to make such an arrest and instead requested him to come to the police station for further questioning. Ferola selected his own time for attendance. We further stated in the earlier case (*Ferola I*) that the East Providence police would have been justified in arresting the defendant by virtue of the existence of the warrant. Consequently, to suggest that the defendant was the victim of an illegal arrest in the case at bar is to raise a question that was determined by this court in respect to this party in a prior case. In light of our prior determination, which we reaffirm, we see no reason to give an extended discussion to this issue. The trial justice's denial of the motion to suppress the statement was correct.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is hereby affirmed. The papers in the case may be remanded to the Superior Court.