STATE

v.

Norberto **ANDRADE**.

No. 87–363–C.A.

Supreme Court of Rhode Island.

July 5, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

Barbara Hurst, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

The defendant appeals from a Superior Court conviction after a jury trial of burglary, sexual assault, larceny, and assault with a dangerous weapon in a dwelling house. The defendant raises a number of issues on appeal: (1) the admission of Sergeant John Seebeck's testimony that the victim's description made him think specifically of the defendant, (2) the trial justice's failure to instruct the jury properly about identification testimony, (3) the trial justice's denial of the defendant's motion to suppress out-of-court identification, and (4) the denial of the defendant's pretrial motion to suppress the in-court identification by the complaining witness. We affirm the conviction.

This case arises from the August 3, 1985 sexual assault and burglary at the apartment of Maria Alves (Alves) in Pawtucket, Rhode Island. At approximately 4:30 a.m. Alves awoke and heard noises but fell back to sleep. When she was again awakened by noises at 5 a.m., she arose and turned on her bedroom light. Alves saw standing in her bedroom doorway a man whom she later identified as defendant, Norberto Andrade.

Alves noticed that defendant had her wallet in one hand and a brown-handled knife with silver edges in the other. The defendant asked her for money, and she replied that she had none. He pushed her against the wall and held the knife to her throat. From his pocket defendant removed her Christmas Club book from which he took $40. The defendant then pushed Alves onto the bed and forced her to engage in sexual intercourse. Although the bedroom light was off, Alves testified that she could see defendant's face by light that filtered into her bedroom from a street lamp. During the sexual assault defendant repeatedly ordered Alves to keep her eyes closed. She testified that because she continued to look at him, he eventually threw a blanket over her head. She stated that when she began to cry, defendant removed the blanket. Thereafter defendant got up, put his pants on, and then picked Alves up and threw her back onto the bed, which broke upon impact. When defendant left, Alves went downstairs to her landlady's apartment and called the police.

Sergeant John Seebeck of the Pawtucket police responded, and Alves described her assailant as a Hispanic or Portuguese male in his twenties, approximately five feet four inches tall with brown hair, wavy in the back. She described him as wearing a white shirt, blue jeans, and sneakers. She also stated that he had a moustache and two or three days growth of beard. She stated to Sergeant Seebeck that defendant spoke with a Portuguese accent. He examined the apartment and found a partially open window leading to the fire escape and also observed a collapsed bed.

Sergeant Seebeck made the association between the particular physical attributes Alves described and those of Norberto Andrade, whom Sergeant Seebeck had known for ten years. Approximately three weeks after the incident Sergeant Seebeck photographed defendant. Alves was shown a photo array from which she selected a photograph of defendant and identified him as her assailant.

## I

The defendant alleges that the trial justice committed reversible error by permitting Sergeant Seebeck to testify that upon hearing Alves's description of her assailant, he thought specifically of defendant. The defendant relies on *State v. Nicoletti,* 471 A.2d 613 (R.I. 1984), where we held that a police officer's testimony concerning his opinion of the description given by the complaining witness was not admissible because his opinion was based on facts that the jurors could have independently analyzed. We concluded that the inclusion of his testimony constituted prejudicial error. We believe that defendant's reliance on *Nicoletti* is misplaced.

In the case before us the trial justice, after hearing voir dire testimony, concluded that Sergeant Seebeck's testimony was relevant to demonstrate to the jury how defendant's photograph came to be in the photo array viewed by Alves. Thus he permitted Sergeant Seebeck to testify that Alves's description brought to his mind Norberto Andrade and that consequently he photographed defendant and forwarded the photograph to the investigating officer, who included it in the photo array. The trial justice stated,

> "You have a situation where, insofar as this police officer is concerned, something clicked in his mind. And I think that those are facts we just can't ignore, even though it might be somewhat prejudicial to the defendant. But I do believe * * * it is evidence that the state has a right to present before the jury."

In *Nicoletti* the police officer offered his opinion of the accuracy of the witness's description of the defendant. In the instant case Sergeant Seebeck merely described the impact that the witness's description had on his thoughts, particularly the degree to which he was able to associate the physical attributes described by Alves with those of defendant, whom he had known for ten years. Sergeant Seebeck's testimony served to explain the events that precipitated the inclusion of defendant's photograph in the array. We are of the opinion that the trial justice properly concluded that Sergeant Seebeck's testimony was relevant.

We have established that relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Estrada,* 537 A.2d 983, 988 (R.I. 1988); *State v. Wheeler,* 496 A.2d 1382, 1388 (R.I. 1985). The well-settled rule in this jurisdiction with regard to the admissibility of evidence, when opposed by an objection of relevancy, is that the issue is a discretionary matter to be resolved by the trial justice. *State v. Estrada,* 537 A.2d at 988. We shall not disturb the trial justice's ruling unless it constitutes a prejudicial abuse of discretion. *Id.* In the instant case, the trial justice carefully reviewed defendant's objection to allowing Sergeant Seebeck's testimony and acknowledged that although somewhat prejudicial, it was outweighed by the probative value of informing the jury how defendant's photograph came to be among those viewed by Alves. We cannot rule that this was an abuse of discretion that unduly prejudiced defendant. Therefore, we shall not disturb the trial justice's ruling.

## II

The defendant contends that the trial justice erred in failing to instruct the jury properly in regard to identification testimony. We believe that the jury instructions were sufficient and therefore proper.

The trial justice refused to give various jury instructions proffered by defendant, specifically regarding identification testimony. The requests were as follows:

"Request No. 19

There are five (5) factors to be considered by you, the triers of fact, in determining reliability of eyewitness identifications of defendants: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the con-

frontation or confrontations, (5) the length of time between a crime and the confrontation between the eyewitness and the defendant. All these factors, not any alone, may be considered by you in determining the reliability of the eyewitness testimony in this case. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. [Parker]*, 472 A.2d 1206 (R.I. 1984)."

"Request No. 20

You need only view the identification testimony with caution if the witness's opportunity for positive identification was not good, if her testimony was qualified, if her positive statements were weakened by cross examination or by a failure to identify the defendant on one or more prior occasions, or if the accuracy of her testimony was otherwise doubtful. *State v. Lewis*, 115 R.I. 217, 341 A.2d 744 (1975)."

"Request No. 21

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later. In appraising the identification testimony of a witness, you should consider the following: (1) are you convinced that the witness had the capacity and an adequate opportunity to observe the offender? (2) are you satisfied that the identification made by the witness subsequent to the offense was the product of his or her own recollection? You may take into account both the strength of the identification made here and the circumstances under which the identification was made; (3) you may take into account any occasions in which the witness failed to make an identification of the defendant or made an identification which was inconsistent with the identification at trial; (4) you must consider the credibility of the identification witness in the same way as any other witness, that is consider whether he or she is truthful, and consider whether he or she had the capacity

and opportunity to make a reliable observation on the matter covered in his or her testimony. *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir. 1972)."

However, the trial justice did instruct the jury on the issue that the state had to prove beyond a reasonable doubt that defendant was in fact the perpetrator of the crimes alleged. We have held that "a trial justice is not required to give specific instructions requested by a party so long as the charge of the trial justice adequately covers the subject matter relating to the request." *State v. Fenner*, 503 A.2d 518, 525 (R.I. 1986). This court reviews the jury charge in its entirety to determine its correctness. "The inquiry is designed to determine 'how a jury composed of ordinarily intelligent persons listening to that instruction at the close of a trial would have appreciated the instructions as a whole.'" *State v. Hadrick*, 523 A.2d 441, 444 (R.I. 1987). Furthermore, we recognize the authority of the trial justice to " 'charge the jury in his own words as long as he states the applicable law.'" *Id.*

We decline to depart from the aforementioned standard and believe that the better practice for a trial justice is to rely on general instructions concerning identification. We have held that counsel rather than the trial justice is the appropriate agent to argue to the jury. *State v. Fenner*, 503 A.2d at 525. It remains a rule in this jurisdiction that judges are inhibited from commenting upon the evidence unless they do so in a completely impartial manner. *Id.* In the case before us defendant's counsel apprised the jury of factors that related to the reliability of the identification evidence. Our reading of the trial justice's charge in its entirety leads us to conclude that the jury was adequately instructed.

III

The defendant alleges that the trial justice erred in denying his motion to suppress the out-of-court identification by Alves. The defendant claims that (a) his arrest was made without probable cause and con-

sequently the identification was the direct fruit of an illegal arrest and (b) the pretrial identification process was impermissibly suggestive. We disagree.

### A

On August 21, 1985, at approximately 2 a.m., Pawtucket police officers Toole and Malloy were patrolling in the area of Slater Junior High School. Officer Toole testified that there had been several break-ins in that area. The officers observed a Hispanic male walk out of an apartment building at 390 Mineral Spring Avenue, and as soon as the man saw the police vehicle, he turned and walked in the other direction. The two officers became suspicious and asked the man, later identified as defendant, some questions. During this time Officer Toole observed defendant move his hand in and out of his pocket several times. The officer asked him to take his hand out of his pocket, but he refused. When Officer Toole got out of his vehicle, defendant fled. Officer Toole gave chase and apprehended him in a nearby apartment building. Sergeant Seebeck arrived on the scene and recognized defendant. He informed Officer Toole that defendant matched the description provided by Alves. The defendant refused to provide a last name or answer any questions.

■ The defendant was taken into custody and transported to the police station where Sergeant Seebeck took his photograph. The defendant claims that his arrest was made without probable cause and that the photograph was therefore obtained illegally. We have held that probable cause to arrest exists if, at the time of the arrest, the arresting officer had knowledge of facts and circumstances, based on reasonable and trustworthy information, sufficient to cause a prudent officer to believe that the suspect had committed or was committing a crime. *State v. Brennan*, 526 A.2d 483, 485 (R.I. 1987); *State v. Pacheco*, 481 A.2d 1009, 1022 (R.I. 1984). We examine the record to determine whether the "mosaic of facts and circumstances" on which the arresting officer relied in arresting defendant, viewed cumulatively

through the eyes of a reasonable, cautious police officer guided by his or her experience and training, established probable cause. *State v. Brennan*, 526 A.2d at 485.

The trial justice articulated the aforementioned standard. He stated that after reviewing the testimony adduced at pretrial hearings, he concluded that defendant was arrested lawfully by Pawtucket police. He noted that testimony was uncontradicted that the officers were patrolling in an area plagued by incidents of crime. Further, the trial justice considered the fact that it was 2 a.m. and that defendant, upon noticing a conspicuously marked police vehicle, turned abruptly and walked in the opposite direction. The officers' curiosity was piqued by defendant's conduct, and as a result they approached defendant for questioning.

The trial justice next considered the fact that defendant fled for no apparent reason when Officer Toole stepped out of his police vehicle. He stated, "Certainly a police officer confronting a person at that time and that place, under those circumstances confronted with a person who immediately runs, has to believe there is something the matter." He concluded that when Officer Toole chased defendant and apprehended him in a nearby apartment, an arrest had occurred.

However, the trial justice correctly determined that the arrest was not what caused the Pawtucket police to obtain a photograph of defendant for inclusion in the photo array. Rather, he pointed out, it was a significant fact that Sergeant Seebeck arrived on the scene and knew defendant to be Norberto Andrade. The defendant identified himself by the name of Joe. The trial justice stated that no testimony was presented to indicate that defendant used the name of Joe Andrade. Sergeant Seebeck testified that he knew defendant's correct name and that defendant was a suspect in the assault on Alves. Relying on that information, he directed the officer to transport defendant to the station.

■ The trial justice concluded, relying on the foregoing facts and circumstances and particularly in light of Sergeant See-

beck's knowledge of the events relating to the sexual assault and his having known defendant for ten years, that probable cause did exist to suspect that defendant committed the crimes of which he was accused. We hold that the trial justice properly ruled that the Pawtucket police had probable cause to arrest defendant, and we shall not disturb his ruling.

### B

The defendant argues that the photographic array shown to Alves was so suggestive that it irreparably tainted the reliability of the out-of-court identification.

We are mindful that "[a] witness' out-of-court identification of an accused is not admissible at trial if the identification procedure used was so unnecessarily suggestive and conducive to a substantial likelihood of misidentification that the accused was denied due process of law." *State v. Holland,* 430 A.2d 1263, 1269 (R.I. 1981); *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410 (1972). "In *Neil v. Biggers* the United States Supreme Court set forth several factors to be considered in deciding whether, in 'the totality of circumstances,' a witness's out-of-court identification of an accused was reliable even though the confrontation procedure used was suggestive." *State v. Holland,* 430 A.2d at 1269–70 (*See* Request No. 19., *supra,* in which the applicable factors are set forth).

■ In the case before us the trial justice concluded that the police made no suggestive remarks to Alves when she viewed the photo array. Further, the court found that, with the exception of one photo, five photographs depicted young men with physical characteristics similar to those of defendant. The trial justice considered Alves's testimony that the assault had lasted approximately fifteen minutes and that a street lamp provided illumination that enabled her to see defendant. Further, Alves stated that for at least ten of the fifteen minutes, she had the opportunity to observe defendant. The trial justice concluded that Alves provided an accurate description of defendant on the night the assault occurred. She testified that she would never forget defendant's face.

Therefore we conclude that the trial justice properly determined that the identification procedure used was not unnecessarily suggestive. The record is bereft of evidence that the police had been suggestive or had influenced Alves's selection of defendant's photograph. Thus the photo array was reliable, and the trial justice concluded correctly that defendant's due-process rights were not violated. We hold that the trial justice did not err in denying defendant's motion to suppress the witness's out-of-court identification.

### IV

■ The defendant argues that the trial justice erred in denying defendant's motion to suppress Alves's in-court identification. We disagree.

The trial justice was satisfied that Alves's identification of defendant was based upon her observation at the time of the assault. The trial justice stated:

"She testified on cross-examination, as I recall, that there was a light outside her window and that light did give her sufficient opportunity to observe the person who she claimed attacked her. She testified that the person was in her apartment for approximately 15 minutes and for at least 10 of those 15 minutes she had an opportunity to observe the defendant. Whether or not she was observing only the knife, as counsel suggests she was, and not the defendant is debatable.

"But I am satisfied from the testimony of Maria Alves, the demeanor of Maria Alves and the opportunity she had to witness the person who allegedly attacked her that she is able, as she testified, to give a description of that person who attacked her even today."

The record amply supports the trial justice's finding. The trial justice did not err in admitting Alves's in-court identification of defendant.

We have considered the defendant's other assignments of error and find them. to be without merit.

For all the foregoing reasons the defendant's appeal is denied and dismissed. The judgment of conviction entered is affirmed. The papers in the case are remanded to the Superior Court.