STATE

v.

Christopher M. BOTELHO.

No. 98–93–C.A.

Supreme Court of Rhode Island.

June 14, 2000.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, William C. Dimitri, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The defendant, Christopher M. Botelho (defendant), has appealed a judgment of conviction of molesting his girlfriend's thirteen-year-old and sixteen-year-old daughters. On December 1, 1997, he was sentenced to concurrent terms of fifty years on all counts of first-degree child molestation, of which twenty-five were ordered to be served and twenty-five suspended, and to concurrent terms of twenty-five years to serve on the counts of second-degree child molestation. For the reasons set forth below, we deny and dismiss the appeal and affirm the judgment in all respects.

## Facts and Procedural History

In early 1989, defendant began residing with his girlfriend and her four children: twin boys, who were five years old, and the complaining witnesses, whom we shall call Lisa, who was ten, and Jill, who was seven. The defendant lived with the family for six years in several locations. On December 20, 1994, Jill alleged to the Department of Children, Youth and Families (DCYF) and to the police that defendant had engaged in sexual activity with her. He was thereafter charged by indictment on eight counts of first-degree child molestation, in violation of G.L.1956 § 11–37–8.1, and ten counts of second-degree child molestation, in violation of § 11–37–8.3.

Both Jill and Lisa testified at the trial that followed. Jill testified that defendant began molesting her at the family's apartment in Providence when she was nine years old. The sexual assaults continued, averaging once or twice a week over the next several years. Although defendant had told her that the abuse should be "[their] secret," Jill testified that she told several people, including her mother, friends from school, and a neighbor. Finally, one of the friends alerted DCYF, prompting the events that led to defendant's arrest.

Lisa also testified that she was molested by defendant. According to Lisa's testimony, the abuse began as sexual touching and soon escalated into intercourse. He started abusing her when she was twelve years old and, Lisa testified, the molestations were a daily occurrence. Lisa testified that she confided this to her mother, but the abuse did not stop. Lisa also testified that she witnessed defendant molesting Jill. Although the sisters never discussed the abuse, Jill placed notes under Lisa's pillow with the message, "Help me." When asked why she didn't tell anybody that defendant was molesting her younger sister, Lisa responded that she saw it as a way for her to escape the abuse. On September 18, 1997, a jury returned a verdict of guilty on all counts. The defendant appealed, raising four issues.

## Cross–Examination on Prior Allegations

The defendant contended first that the trial justice improperly limited the scope of his cross-examination of Jill. Specifically, defense counsel sought to question Jill about unfounded allegations of physical and sexual abuse that she allegedly had lodged both against her natural father and her mother's former boyfriend. The defendant argued that the trial justice's decision to prohibit this line of questioning violated his federal and state constitutional rights to confrontation and cross-examination of witnesses against him.

An accused in a criminal prosecution is guaranteed the right to confront witnesses, pursuant to the Sixth Amendment to the United States Constitution. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). "This right is applicable in state criminal proceedings through the Fourteenth Amendment to the United States Constitution, *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and by art. 1, sec. 10, of the Rhode Island Constitution." *State v. Pettiway*, 657 A.2d 161, 163 (R.I.1995). The right to cross-examine witnesses is a primary interest secured by the confrontation clause. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965).

Applying this principle, this Court has held that "[e]ffective cross-examination is an essential element of the presentation of a full and fair defense and is guaranteed by both the State and the Federal Constitutions." *State v. Veluzat*, 578 A.2d 93, 94 (R.I.1990). Furthermore, a "cross-examiner must be given a reasonable opportunity to explore and to establish any possible bias, prejudice, or ulterior motive that a witness may possess that might affect the witness' testimony." *Id.* 94–95. Nevertheless, the scope of cross-

examination is not unlimited. It is within the trial justice's sound discretion to limit the extent of cross-examination, and we shall not disturb such a ruling on appeal absent a showing of clear abuse of that discretion. *Id.* at 95.

During the cross-examination of Jill, defense counsel asked whether she had lodged accusations of excessive discipline with DCYF against her mother's former boyfriend. The prosecutor objected, and the trial justice sustained the objection. During the sidebar conference that followed, the trial justice explained,

> "I'm not going to allow you to try to prove that these are concocted charges by virtue of the fact that she complained about excessive discipline from [her mother's former boyfriend]. I will certainly allow you, as I indicated in my ruling, to show that she made an unfounded complaint of sexual abuse against [the boyfriend]. The fact that she concocts a charge of unfounded sexual abuse from a complaint of discipline is where I'm drawing the line."

The cross-examination continued. At the request of defense counsel, the parties again convened at sidebar, where defense counsel argued that he should be allowed to question Jill about accusations of sexual abuse against her father. The prosecutor contended, however, that DCYF records contained no indication that Jill ever had made sexual allegations against her father. Before deciding on the admissibility of the evidence in question, the trial justice allowed defense counsel to conduct a voir dire hearing in which Jill testified outside the presence of the jury. The pertinent part of the examination progressed as follows:

> "Q [Jill], prior to these allegations being brought against [defendant], it's true that you had also made allegations of sexual impropriety against your natural father; isn't it?
>
> "A No, sir.
>
> "Q You never told [DCYF] that he would gather you, your sister and your

brothers and make you kiss each other sexually?

> "A No, sir.
>
> "Q So those allegations were untrue?
>
> "A Yes, they are.
>
> "Q And D.C.F.—did you ever speak to [DCYF] while your father was living with you?
>
> "A No.
>
> "Q Did you ever speak to [DCYF] after your father left the house?
>
> "A I don't believe so. I don't know.
>
> "Q You never made those allegations against your father?
>
> "A No, I didn't."

After considering Jill's unequivocal denial that she had made such allegations against her father and in light of defendant's inability to produce evidence to the contrary, the trial justice precluded defense counsel from cross-examining Jill about the alleged accusations.

■■■ This Court has held that evidence of similar accusations by a complaining witness may be admissible to challenge the witness's credibility. *State v. Izzi,* 115 R.I. 487, 490, 348 A.2d 371, 372–73 (1975). We have explained that "guilt or innocence often turns on the relative credibility of the prosecut[or] and the accused; by the knowledge that the charge, though easily made, can be disproved only with difficulty; and by the possibility that the accusation may be fantasized or motivated by malice." *Id.* at 490, 348 A.2d at 372. The evidence may be admissible even when the allegations were never proven false or were never withdrawn. *State v. Oliveira,* 576 A.2d 111, 113 (R.I.1990). Moreover, evidence of alleged false charges may be admissible regardless of whether the accusations were made before or after those made in respect to a defendant. *State v. McCarthy,* 446 A.2d 1034, 1035 (R.I.1982).

In recognizing the importance of this type of evidence in cases of sexual allegations, we have held that in a prosecution for a child molestation, the trial justice

erred in refusing to allow defendant to cross-examine the complaining witness about sexual abuse allegations she had made against other men. *Pettiway*, 657 A.2d at 164. Likewise, we were persuaded in *Oliveira*, 576 A.2d at 113, that the trial justice improperly infringed on defendant's right to confrontation and effective cross-examination by not allowing defendant the opportunity to question the child witness about previous allegations of sexual assault.

In the case *sub judice*, counsel for the defense sought to undermine Jill's credibility by offering evidence that her accusations were part of a pattern. He argued at sidebar that the jury should be allowed to hear that Jill had made similar accusations about her natural father and her mother's former boyfriend. The record before us, however, is completely devoid of any evidence that Jill made similar sexual accusations against the two men. In this case, Lisa had made sexual allegations against her mother's former boyfriend, and defense counsel was allowed to elicit this information during her cross-examination. In addition, defendant was permitted to imply that the charges were unfounded because the accused was not indicted, and the charges were dismissed.

It is our considered opinion that Jill's complaint of excessive discipline, purportedly lodged against her father[1] and her mother's former boyfriend, is fundamentally different from a complaint of sexual molestation. We agree with the trial justice that admission of this evidence would have served only to confuse and mislead the jury. Therefore, we conclude that in limiting the scope of cross-examination, there was no abuse of discretion on the part of the trial justice. In the absence of such a showing, we conclude that no error occurred.

## Expert Testimony

The defendant further asserted that the trial justice committed reversible error when he allowed Arbetta Kambe, M.D., (Kambe) to testify as an expert in the field of gynecology. The defendant contended that Kambe was not a certified gynecologist and that she had little experience in conducting gynecological exams on children who were alleged to have been sexually molested.

Rule 702 of the Rhode Island Rules of Evidence permits a "witness qualified as an expert by knowledge, skill, experience, training, or education" to testify on scientific, technical or other specialized knowledge that will assist the jury in understanding the evidence or in determining a fact in issue. The application of this rule lies within the sound discretion of the trial justice. *State v. Collins*, 679 A.2d 862, 867 (R.I.1996). Before admitting expert testimony, "a trial justice must consider whether the testimony sought is relevant, within the witness's expertise, and based on an adequate factual foundation. However, once these questions have been favorably determined, the evidence generally ought to be admitted." *State v. Bettencourt*, 723 A.2d 1101, 1112 (R.I.1999) (quoting *Rodriquez v. Kennedy*, 706 A.2d 922, 924 (R.I. 1998) (per curiam)). This Court will not reverse the trial justice's finding on the admissibility of expert testimony absent an abuse of discretion. *Collins*, 679 A.2d at 867.

Our review of the record revealed no such abuse of discretion. The state called Kambe, a board-certified family practitioner who had conducted a gynecological examination of Jill at the request of DCYF. Kambe testified that the findings of her exam were possibly consistent with the allegations of abuse. Before so doing, the witness reviewed her qualifications. After graduating from medical school, she

---

**1.** The defense counsel represented to the trial justice that he had a DCYF document, indicating that Jill was "afraid of her father because he is a drunk who smashes the apartment and [her] mother." The document, however, did not name the source of those statements.

served her residency at Brown University in family practice. At the time of trial, she had been employed at Family Health Services for three years. Her responsibilities included performing gynecological exams on women, teenagers, and young girls. On cross-examination, she admitted that she was not a board-certified gynecologist, but she estimated that she performed an average of one gynecological examination per day during her three years of employment with Family Health Services.

At the time that she examined Jill, Kambe had conducted about five or six gynecological exams following allegations of sexual abuse of a child. The defendant argued that because Kambe was not "by training, experience or certification, a gynecologist," she should not have been allowed to testify as an expert in gynecology.

We have held in a medical malpractice case that a physician who was not board-certified in emergency and internal medicine was nevertheless qualified to testify as an expert witness in a case alleging negligent treatment of an animal bite wound by the defendant emergency room internist/physician. *Marshall v. Medical Associates of Rhode Island, Inc.*, 677 A.2d 425, 426 (R.I.1996) (per curiam). We reached that conclusion because the testifying doctor had encountered "hundreds" of similar wounds and had lectured at several medical schools on animal bite wounds. *Id.* at 427. Similarly, in a dispute over the admission of expert witness testimony in a criminal case, *State v. Ferola*, 534 A.2d 173, 176 (R.I.1987), a criminal defendant had argued that the state's witness, the physician who had performed an autopsy on the deceased victim, was not qualified to testify as an expert witness. We disagreed, reasoning that the doctor's training and experience were sufficient to qualify him as an expert. *Id.* We further explained that questions on the extent of the doctor's training and experience were issues appropriately raised on cross-examination but were not dispositive of the admissibility of expert testimony. *Id.*

Here, Kambe had knowledge and experience in the field of gynecology. The defense counsel was allowed to question the extent of this experience and to elicit Kambe's admission that she had performed few examinations following an allegation of child molestation. Under *Ferola*, 534 A.2d at 176, such considerations "could only affect the weight and not the admissibility" of her testimony as an expert witness. Therefore, we conclude that Kambe's clinical experience qualified her to give a medical opinion on the results of her examination of Jill.

## Motion to Pass

The state filed a pretrial motion *in limine* to bar the introduction of evidence that Jill and Lisa smoked marijuana. The defendant did not object to the motion on the condition that evidence in respect to his own marijuana use also would not be introduced. The trial justice agreed, and the trial proceeded without reference to illegal drug use until the following exchange took place during defendant's cross-examination of Jill:

"Q Do you remember [defendant, defendant's sister] and anybody else getting together virtually every night to play cards?

"A That wasn't virtually every night.

"Q It wasn't virtually every night?

"A They were playing cards and smoking weed in my basement.

"[DEFENSE COUNSEL]: Move to strike, your Honor. The motion—

"THE COURT: All right. Take the jury out."

The trial justice thereafter granted defendant's motion to strike the answer. However, he denied defendant's motion to pass the case. Immediately upon the jury's return to the courtroom, the trial justice instructed the jurors to disregard any mention of marijuana. Specifically, he charged the jury:

"Members of the jury, I have just ordered that so much of the witness's tes-

timony as involved the word 'grass' be stricken. If you heard it, you must disregard it. There is no evidence before you as to what the witness means by that or who was involved. And, it has nothing to do with the trial of this case. Simply, put that comment, if you heard it, out of your mind, give it no weight in your deliberations when you come to deliberate in this case."

On appeal, defendant argued that the trial justice erred in denying defendant's motion to pass the case, especially in light of the judge's pretrial ruling to bar admission of this evidence involving marijuana. The defendant asserted that the evidence of illegal drug use was so prejudicial that it required the granting of a new trial. He further maintained that the evidence irreversibly damaged his credibility to such an extent that the cautionary instruction, though timely, was futile.

 "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Kryla*, 742 A.2d 1178, 1186 (R.I.1999). When reviewing a trial justice's determination on a motion to pass a case, we shall accord great deference to that decision because "he or she possesses 'a "front-row seat" at the trial and can best determine the effect of the improvident remarks upon the jury.'" *State v. Figueroa*, 673 A.2d 1084, 1091 (R.I.1996) (quoting *State v. Tempest*, 651 A.2d 1198, 1207 (R.I.1995)). Therefore, the determination of the trial justice will be given great weight and will not be disturbed unless it is shown to be clearly wrong. *Id.*

 Before denying defendant's motion to pass the case, the trial justice admitted his own confusion with respect to whether or not defendant was included in the group who smoked marijuana. Moreover, the trial justice stated that he presumed the statement was inadvertent. Under these circumstances, the single use of the word "weed," without any clear ref-

erence to the user, was not sufficient to inflame the jury and require a new trial. In any case, the trial justice's timely instruction that pointed out the ambiguity of the statement cured any prejudice.

### Exclusion of Evidence

The defendant's final claim of error was that the trial justice erred when he did not permit defense counsel to cross-examine Jill with respect to certain evidence. Specifically, the trial justice refused to allow defense counsel to question Jill about the nature and purpose of a doctor's visit on December 19, 1994, the day before she made sexual allegations against defendant. The defendant contended that this evidence tended to establish that he had not been molesting Jill.

On December 19, 1994, Jill's mother and defendant discovered a letter that Jill had written to a twenty-nine-year-old man who was a "friend of the family." According to defendant, the contents of the letter suggested that Jill was having a sexual relationship with the older man. That day, defendant and Jill's mother banned the man from their house and took Jill to a gynecologist for a prescription for birth control pills.

At trial, defense counsel cross-examined Jill about the letter. She admitted that she was upset and angry with defendant for banning the man from their residence. She also acknowledged that her mother brought her to a doctor immediately following this incident. At this point in the cross-examination, the jury was excused, and defense counsel argued to the trial justice that he should be allowed to question Jill about the nature and purpose of the doctor's visit. The prosecutor objected to the introduction of this evidence, arguing it was highly prejudicial. The trial justice sustained the objection, finding that the evidence was needlessly prejudicial, could not be used to impeach Jill's credibility, and moreover, it was not relevant to the guilt or innocence of defendant. The trial justice, however, allowed defense

counsel to ask Jill who drove her to the doctor's office.

 Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Decisions about the admissibility of evidence on relevancy grounds are left to the sound discretion of the trial justice. *State v. Evans*, 742 A.2d 715, 719 (R.I.1999). We shall not disturb such a decision on appeal absent an abuse of discretion. Furthermore, "[t]he trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." *Id.*

■ Here, defendant argued that the fact he drove Jill to the gynecologist to obtain a prescription for birth control pills was relevant and supported his assertion that he did not molest the child. It was the defense's theory that defendant would not have driven Jill to the doctor's office if the examination results would support allegations of abuse. With this contention, we must disagree. First, such evidence might also be construed as supporting the state's theory that defendant had abused Jill. Second, it was very common for defendant to act as chauffeur for his girlfriend and her children because the mother neither owned a car nor did she have a driver's license. Thus, by "volunteering" to drive them, defendant did not raise any suspicions. Third, if defendant were molesting Jill, a birth control prescription certainly would serve his malicious purposes.

In any case, defense counsel was allowed some latitude in cross-examining Jill on the subject. The only evidence which was excluded were the specific words "gynecologist" and "birth control pills." Even assuming that this evidence rose above a level of minimal relevance to the charges in this case, its exclusion was not an abuse of discretion. Here, the questionable rele-

vance of the evidence was substantially outweighed by the danger of confusing and misleading the jury. R.I. R. Evid. 403.

In conclusion, therefore, for these reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court to which the papers in this case may be returned.