STATE

v.

James OLIVEIRA.

No. 89–272–C.A.

Supreme Court of Rhode Island.

June 8, 1990.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This case is before the court on the defendant's appeal from a March 3, 1988 jury trial that resulted in a conviction of first- and second-degree child molestation. The trial justice sentenced the defendant, James Oliveira, to thirty years to serve for the first-degree child-molestation conviction and ten years to serve concurrently for the second-degree child-molestation conviction. The trial justice also granted the defendant's motion for judgment of acquittal on a third charge of child abuse. The defendant now appeals, claiming that the trial justice erred by prohibiting the defendant from eliciting testimony from the child victim, whom we shall call Nancy, of prior allegations of sexual abuse against two other men. The defendant also claims that the trial justice erred in refusing to allow the admission into evidence of a sentence in a report from the Department of Children and Their Families (DCF). This sentence referred to a statement by Nancy that may have revealed an alternative source of Nancy's animosity toward the defendant.

Nancy, who was eleven years old at the time of trial and in the sixth grade, testified that in 1984, when she was eight years old, she was living in Cranston with her mother, defendant, her half sister whom we shall call Ellen, and her uncle. The defendant was the long-time boyfriend of Nancy's mother and the natural father of Ellen and another child born since 1984. While living in Cranston, oftentimes during the night Nancy would wet her bed. Her mother or defendant would take turns checking on her in the middle of the night. If defendant found that Nancy had wet the bed, he would take her into the bathroom while her mother would remain asleep in her room.

Nancy gave a detailed description of events that occurred in the bathroom. Sometimes defendant would shut the door and either undress Nancy or indicate to Nancy that she should remove her own nightclothes. The defendant would make Nancy do "spread eagle," which required that she maintain a pushup position with her body in the air. When she could no longer hold herself up, she would fall to the bathroom floor. Sometimes defendant made Nancy do "spread eagle" over the bathtub that was filled with cold water. If Nancy could not hold herself up, she would fall into the water.

Nancy testified that defendant would sometimes put his penis into her vagina and her mouth while they were in the bathroom. When Nancy would try to call out, defendant put his hand over her mouth. Nancy would not call out to her mother as defendant led her to the bathroom. Nancy testified that defendant did not always sexually assault her, but when he did, it was always when she had wet the bed.

Nancy related these events at a family wedding in the presence of her aunt and uncle. The uncle, who was the same uncle with whom she had lived, testified at trial that he was often awake when defendant would take Nancy into the bathroom. Although he stated that he had no personal knowledge of any sexual abuse, he testified that defendant would often keep Nancy in the bathroom for two hours. He also stated that defendant would take Nancy into the bathroom on the nights that defendant would argue with Nancy's mother about various things.

On direct examination Nancy also testified that she would get mad at defendant because he hit her and because she thought that defendant liked her sister more than he did her. Nancy stated that defendant would also punish her by forcing her to stand in the corner and by hitting her with

a belt. A Cranston detective testified that when he spoke to Nancy in November 1984, she stated that she hated defendant because he would not give her toys and would give her sister everything.

The DCF records reveal that Nancy made allegations of sexual abuse against two other men. Prior to trial, the state made a motion in limine to preclude the defense from inquiring into Nancy's other allegations of sexual abuse. These prior allegations were investigated by DCF workers but did not result in prosecutions. The state argued that because Nancy had never recanted those allegations, the defense could not introduce evidence of the investigations or the fact that the complaints were dropped with no action taken.

Initially the trial justice disallowed admission of evidence concerning Nancy's prior allegations. He later, however, reversed his ruling on the state's motion in limine. The trial justice changed his ruling in light of this court's opinion in *State v. DeBarros*, 441 A.2d 549 (R.I.1982), which held that a defendant is not required to make an offer of proof with respect to cross-examination. A third ruling was rendered thereafter: The trial justice believed that unless Nancy recanted those other allegations or changed her testimony concerning them, evidence of these other allegations was not admissible. The trial justice also stated that whereas evidence of prior sexual conduct goes only to the issue of consent, since Nancy was a child, consent was not an issue in this case. The final ruling was based on the trial justice's reading of G.L. 1956 (1981 Reenactment) § 11–37–13, the so-called Rape Shield statute, and on Rule 412 of the Rhode Island Rules of Evidence.

The trial justice misinterpreted the state's rape-shield statute, § 11–37–13, by finding that it precluded admission of evidence of Nancy's prior allegations of sexual assault. The rape-shield statute was enacted to encourage rape victims to come forward and report crimes. The restriction on the admissibility of certain evidence was intended to protect rape victims from unnecessary probing by a defense counsel into a victim's sexual history. *State v.*

*Lemon*, 456 A.2d 261, 264 (R.I.1983). According to the statute, the court shall rule upon the admissibility of the evidence of the victim's sexual history and allow its admission if the court finds it relevant after the defendant makes a specific offer of proof. This evidence may be relevant for a number of reasons, including a challenge to a witness' credibility.

■ This court has held that evidence of false accusations by the complaining witness is admissible to negate the offense with which a defendant is charged. *State v. Izzi*, 115 R.I. 487, 348 A.2d 371 (1975). Moreover, we have held that evidence of a complaining witness' withdrawal of a rape charge against a man other than the defendant is admissible as a challenge to the complaining witness' credibility in the defendant's rape trial. *State v. McCarthy*, 446 A.2d 1034 (R.I.1982). We are now asked to consider a similar question: Is evidence of the complaining witness' other allegations of sexual assault admissible in this case even though these allegations were neither proven false nor withdrawn.

■ We believe that evidence of a complaining witness' prior allegations of sexual assault may be admitted "to challenge effectively the complaining witness's credibility," even if the allegations were not proven false or withdrawn. *Id.* at 1035. We have often stated that the credibility of a witness is always in issue. The defendant's inability to prove that prior accusations were in fact false does not make the fact that prior accusations were made irrelevant. By not allowing defendant the opportunity to challenge Nancy's credibility, the trial justice inappropriately infringed on defendant's Sixth Amendment rights of confrontation and effective cross-examination. *State v. DeBarros*, 441 A.2d 549 (R.I.1982).

■ Evidence of Nancy's prior accusations should have also been admitted to demonstrate to the jury that Nancy had other sources for her knowledge of the sexual acts she had described. As the Maine Supreme Court stated in *State v. Jacques*, 558 A.2d 706 (Me.1989):

"Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated the charge." *Id.* at 708.

The need for this evidence was compounded by the state's closing argument. In closing argument the state's attorney implied that defendant was the only source of Nancy's knowledge of sex because, as he stated, "[n]o 8-year-old child would know about vaginal and oral penetration, no child would know about ejaculation, unless she had been subjected to the same herself." Such a statement was inappropriate because counsel knew that the child may have had other sources of knowledge of sexual contact.

■ The defendant also objects to the trial justice's ruling disallowing the admission of a DCF report. The report contained a statement by Nancy that her sister, Ellen, defendant's natural child, "never gets in trouble with Jim O. [defendant]." This statement is relevant, defendant claims, because it revealed Nancy's bias against defendant. The defendant claims that the report was admissible pursuant to Rule 803(6) of the Rhode Island Rules of Evidence as a business-records exception to the hearsay rule and pursuant to Rule 801(d)(1) as a prior inconsistent statement. The trial court, however, in disallowing its admission, stated that the single sentence that defendant wished to be admitted, taken out of context, was neither reliable nor probative of Nancy's bias. In addition, the court agreed with the state that the single sentence was totem-pole hearsay.

Evidence admitted pursuant to Rule 803(6) must be probative and sufficiently reliable. The sentence that Ellen never gets into trouble with her father does not reveal anything of relevance, nor does it expose Nancy's bias. The statement does not have any tendency to make the existence of any fact more or less probable. Rule 401. The sentence is also unreliable because of its ambiguity and because it is hearsay upon hearsay. Moreover, the DCF worker who wrote the sentence in her report was out of state and not subject to cross-examination. The trial justice therefore did not abuse his discretion by excluding the evidence.

■ We also agree that the evidence should not have been admitted as an inconsistent statement. Rule 801(d)(1) allows the admission of an inconsistent statement when there is inconsistent testimony against which the prior statement may be juxtaposed. *State v. Coppola,* 502 A.2d 802, 804–05 (R.I.1985). The statement will not be admissible, however, if the prior inconsistent statement is intended to impeach the witness on a collateral matter. The fact that Nancy stated that her sister did not get into trouble with defendant, and later failed to remember whether she made this statement, is not relevant to the case.

■ Even if the evidence may be viewed as probative of Nancy's bias, the trial justice could exclude the evidence if its probative value is outweighed by the danger of confusion of the issues, the possibility of misleading the jury, the waste of time, or the needless presentation of cumulative evidence. Rule 403. Evidence of Nancy's dislike for the defendant was already revealed on direct examination. Nancy testified that she thought that the defendant liked her sister more than he did her. In addition a Cranston detective testified that Nancy told him that she hated the defendant because he would not give her toys and would give her sister everything. Therefore, the sentence from the DCF report that the defendant wished to have admitted would have added nothing to the defendant's claim that Nancy's dislike for the defendant stemmed from his preferential treatment of Ellen, Nancy's sister.

Therefore the defendant's appeal is granted. The judgment of the Superior Court is hereby vacated. The case is remanded to the Superior Court for a new trial consistent with this opinion.