**STATE**

v.

**Joseph D. DORSEY.**

No. 99–165–C.A.

Supreme Court of Rhode Island.

Nov. 8, 2001.

Aaron Weisman, Virginia M. McGinn, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This is a rape case in which the defendant, Joseph D. Dorsey (defendant),

challenges the trial justice's exclusion of certain documentary evidence that his attorney sought to deploy when he was cross-examining the state's complaining witness during the defendant's criminal trial. The defendant wanted to use this evidence to impeach his former wife (victim), who was the alleged rape victim and the state's complaining witness at the trial. The excluded evidence related to certain specific events or incidents in the victim's mental-health history, to an accusation of rape she had leveled against her family's paperboy when she was a teenager, and to the paternity suits she had filed against three other men to determine the father of her first child. The defendant challenges these evidentiary rulings on his appeal from his conviction of first-degree-sexual assault (four counts), burglary, and violating a protective order against the victim.[1] He argues that these rulings fatally compromised his ability to challenge the rape victim's credibility as a witness. As a result, he asserts, the trial justice violated his constitutional right to confront and cross-examine his accuser.

## Facts and Travel

The defendant and the victim were married on July 1, 1995, after they had lived together for the previous four years. Their relationship produced one child, a daughter, who was born on February 19, 1994. The victim also had an older daughter born in 1990 from a previous relationship. After the couple were married, the family lived together on the second floor of a Cranston apartment house owned by defendant's aunt. They separated, however, in April 1996, after the victim obtained a Family Court restraining order against de-

fendant. Thereafter, the victim and her daughter remained in the Cranston apartment while defendant lived elsewhere. By agreement with the victim, defendant would drop off his child-support payments of $100 on each Friday at the Cranston apartment. He would do this by sliding the money under the downstairs door. In February 1997, after the attack described below, the couple divorced.

According to the victim, on Friday, April 27, 1996, she fell asleep on the couch in her living room at about 11 p.m. When she awoke she was gasping for air because defendant had placed duct tape over her mouth and was on top of her. He then repeatedly raped and battered her. After defendant finally left the apartment, the victim called the police and had him arrested.

Before trial, the state moved *in limine* to bar the defense from questioning the victim about the paternity of her older daughter, who had been born in 1990, before the victim began dating defendant. After the birth of her eldest daughter, the victim had filed paternity suits against the three men who she believed could have been responsible for fathering this child. Only the third paternity suit was pending at the time of defendant's trial because, by that time, blood tests had demonstrated that neither of the other two individuals was the father.

The state also moved *in limine* to bar the defense from questioning the victim, who was twenty-seven years old at the time of trial, about certain hospital records relating to an accusation of rape she had made when she was a teenager involving the family's paperboy. The records related to her visit to Fogarty Memorial Hospi-

1. Although defendant's first trial for these charges resulted in his conviction for violating the protective order, the jury deadlocked on the remaining charges. This appeal followed after a second trial resulted in defendant's conviction on the other charges.

tal, when she was just fifteen-years old, more than ten years before the trial began. The hospital report indicated that during a consultation with a psychiatrist at the hospital, the victim told the doctor that a fourteen-year-old paperboy had raped her when she was seven-years old. The report also indicated that when the victim told her mother about that incident six years later, when she was thirteen, her mother had reacted by calling her a liar.

The state also moved *in limine* to bar the defense from alluding to or introducing other medical records relating to other specific incidents in the victim's past pertaining to her mental-health history. These records showed that, when she was fifteen-years old, she had been hospitalized for several weeks after a suicide attempt. Also, when she was twenty-one years old, medical records from another hospital indicated that she had visited there to obtain treatment for depression. After hearing evidence and argument on these motions, the trial justice granted the motions *in limine*, thereby precluding the defense from introducing evidence on these subjects.

On appeal, defendant asserts that the trial justice improperly compromised his ability to confront and cross-examine his accuser when she barred him from using this evidence to impeach her credibility. He argues that the trial justice erred by precluding him from referring to the paternity suits and to the victim's teenage accusation that a paperboy had raped her when she was seven-years old. He contends that the jury should have been allowed to weigh this evidence in assessing the victim's credibility. He advances a similar argument with respect to the incidents concerning the victim's teenage suicide attempt and her past treatment for depression, all of which the trial justice kept the jury from hearing.

## Analysis

■ Both the Sixth Amendment to the United States Constitution (through the Fourteenth Amendment) and article 1, section 10, of the Rhode Island Constitution guarantee individuals accused of criminal charges the right to confront and cross-examine any adverse witnesses who testify against them. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. Texter,* 594 A.2d 376, 377 (R.I.1991) (citing *State v. Parker,* 566 A.2d 1294, 1294–95 (R.I.1989)). The right to cross-examine adverse witnesses provides the defendant with an opportunity to test the credibility and veracity of the witnesses' testimony. *Davis,* 415 U.S. at 315–16, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. This right, however, is not unlimited, and it may be circumscribed within reasonable parameters of relevance in the exercise of the trial justice's discretion. *State v. Warner,* 626 A.2d 205, 209 (R.I.1993).

■ Thus, so long as defendant has been afforded the opportunity to conduct sufficient cross-examination under the applicable rules of evidence to satisfy the above-stated constitutional guarantees, the trial justice possesses "wide latitude" to impose limitations on further cross-examination based upon numerous evidentiary and trial-management concerns, including the need to avoid potential confusion of the issues. *State v. Vento,* 533 A.2d 1161, 1164 (R.I.1987). If the defense has been allowed to share its theory of the case with the jury, including facts from which the jury can "appropriately draw inferences relating to the reliability of the witness," *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 354, then reasonable limitations on additional cross-examination will not serve to impinge upon the above-referenced constitutional guarantees.

Moreover, after allowing sufficient cross-examination to satisfy this constitutional threshold, the trial justice's decision to limit further cross-examination is reversible only upon a clear abuse of discretion. *State v. Anthony*, 422 A.2d 921, 924 (R.I. 1980). Even then, however, under the harmless error rule, if the error or abuse of discretion is harmless beyond a reasonable doubt, the result at trial will not be reversed on appeal. *State v. Pettiway*, 657 A.2d 161, 164 (R.I.1995) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986)). In sum, a trial justice's rulings excluding certain evidence from use during cross-examination will not be disturbed on appeal, except in cases of clear abuse and then only when that abuse amounts to prejudicial error. *E.g., Anthony*, 422 A.2d at 924 (finding no abuse in limiting cross-examination of witness about pending harboring charge).

Thus, the issues before us are (1) did the trial justice violate defendant's constitutional right to cross-examine his accuser by precluding him *ab initio* from using the evidence in question during cross-examination of the state's complaining witness? And, if not, (2) did the trial justice otherwise abuse his discretion in so limiting the scope of the cross-examination?

## I

## Satisfaction of Right to Confront and Cross-examine the Accuser

■ The record shows that defendant had the opportunity at trial to confront and cross-examine his accuser on issues that were relevant to the alleged sexual assaults. The defendant's attorney interrogated the victim about the alleged sexual assaults and about events leading up to the assaults during the weeks and months before they occurred. This was the kind of confrontation and cross-examination that

the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution both envision and guarantee. *See Davis*, 415 U.S. at 317–18, 94 S.Ct. at 1111, 39 L.Ed.2d at 354. Although establishing the witness's motives or bias in testifying is also a key part of the constitutionally protected right to cross-examination, *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353, the evidence offered to prove motivation or bias must be related to the charge the defendant is facing. *State v. Botelho*, 753 A.2d 343 (R.I.2000).

■ Thus, evidence of a complaining witness's similar accusations of wrongdoing against others may be used to challenge a witness's credibility with respect to the pending charges, regardless of whether those prior accusations ever were proved false. *Botelho*, 753 A.2d at 346 (citing *State v. Izzi*, 115 R.I. 487, 490, 348 A.2d 371, 372–73 (1975) and *State v. Oliveira*, 576 A.2d 111, 113 (R.I.1990)); *see also* R.I. R. Evid. 404(b). However, accusations that are "fundamentally different" from the ones in the case at bar cannot be so used. *Botelho*, 753 A.2d at 347 (refusing to allow cross-examination in a child sexual-abuse case about the minor's accusations of excessive discipline against two other men because those claims were "fundamentally different").

For the reasons discussed below, we conclude that the excluded evidence concerning the paternity suits was irrelevant to the sexual-assault charges in this case and that the alleged childhood rape was so remote in time, so different in circumstances, and so potentially misleading to the jury that precluding defendant from using it at trial for impeachment purposes did not constitute an abuse of the trial justice's broad discretion in this area.

## II

## Limiting Scope of Cross-examination

## A.

### The Paternity Suits

■ The trial justice excluded the proffered evidence concerning the paternity suits filed by the victim on the grounds of irrelevance. As the trial justice recognized, the victim's mere filing of these suits did not indicate that her charges against these individuals were deliberately false or that there was anything vindictive or vengeful in the fact that the victim had filed them. Rather, all that these charges indicated was that the victim was uncertain about which one of the three named individuals was the biological father of her first child and that she was seeking a definitive legal resolution of this question. Most significantly, none of those charges involved a rape case, such as the one for which defendant was on trial. The defendant failed to indicate how the victim's mere filing of paternity suits against these three other men would in any way provide her with a motive or intent to falsely charge this defendant with sexual assault. And the mere fact that blood tests resulted in a dismissal of the suits against two of the three potential fathers did not mean that the suits were frivolous or groundless. Moreover, unlike the rape charges against defendant, the paternity suits did not involve any sexual-assault claim or other nonconsensual sexual activity. Thus, unlike *Pettiway*, this was not a situation in which the previous charges would suggest that the complainant had a pattern of falsely accusing men of sexually assaulting or abusing her. *See also Oliveira*, 576 A.2d at 111–12 (allowing evidence of victim's similar charges of sexual assault to be admitted in sexual-assault trial).

On this record, the trial justice was entitled to conclude that the defense was merely attempting to disparage the rape victim's character and credibility by proof of specific instances of her bad character or bad acts in the past. We agree with the trial justice's decision to preclude the use of this evidence. In *Johnson v. State*, 889 P.2d 1076 (Alaska Ct.App.1995), the court upheld a trial justice's decision to exclude evidence of a previous paternity claim made by the complaining witness, stating as follows:

"The evidence of [complainant's] previous paternity claim that was proffered in this case had no logical bearing on [complainant's] bias, prejudice, or motive to fabricate; given its remoteness in time and dissimilarity to the circumstances of the current case, it did not establish a pattern or scheme of falsification on [complainant's] part. At most, the evidence amounted to character evidence reflecting negatively on [complainant's] general credibility. As such, however, the evidence of [complainant's] past misconduct was classic propensity evidence and was therefore inadmissible. A.R.E. 404(b)(1); A.R.E. 608(b). Under A.R.E. 608(a), the Johnsons were free to ask Palmer to state his opinion of [complainant's] credibility, or to testify as to [complainant's] reputation for truthfulness. But they had no right to impeach [complainant's] credibility by recourse to evidence of specific incidents of past misconduct." *Johnson*, 889 P.2d at 1081.

This rationale is particularly telling when, as here, there is no indication that the victim intentionally had leveled groundless or false charges against any one, let alone against this defendant.

## B.

### Childhood Rape Accusation

■ The defendant next challenges the trial justice's decision to bar his use on

cross-examination of evidence that, when the victim was fifteen-years old, she told a psychiatrist that she had been raped at age seven by an unnamed fourteen-year-old paperboy. The victim was twenty-seven when defendant, her estranged husband, was on trial for raping her. Thus, the defense sought to impeach the victim by using evidence of an allegation she had made more than ten years earlier, when she was still a teenager, about an incident that supposedly happened to her some twenty years before defendant's trial, when she was just a seven-year-old child. "It is the duty of the trial justice to determine relevance and to balance the probative value of evidence against its possible misleading effect upon the jurors." *Warner*, 626 A.2d at 209. The proffered evidence involved an unidentified assailant's alleged assault on a child some twenty years earlier, one that was not even reported until six years after the alleged occurrence. Given the dissimilarity of this incident to those at issue during defendant's trial, the trial justice was entitled to consider the jury's potential confusion, the victim's tender age when the charge was made and when the underlying event supposedly occurred, and the remoteness in time of this prior charge as weighing against its admission into evidence. Thus, we are not persuaded that the trial justice abused his discretion in precluding cross-examination concerning this incident. *See State v. Simpson*, 606 A.2d 677, 680 (R.I. 1992).

The defendant asserts that evidence of the challenged rape charge was relevant to show the complainant's intent to initiate proceedings that would cause a person to answer charges in court, as well as suggesting that she had a history or pattern of bringing such charges. But no evidence indicated that any one was ever brought to court or accused of raping the victim, much less was there any showing that the charge was false. Indeed, the victim, who was just a young girl when this event allegedly occurred, did not even mention this incident to anyone until she was approximately thirteen-years old. Thereafter, she did not discuss the alleged incident again until two years later, when a doctor asked her whether she ever had been raped. Even then, the alleged perpetrator was referred to only as a fourteen-year-old paperboy. Thus, the defense would not have been able to show how the incident indicated a vengeful motive on the victim's part vis-à-vis defendant, because she never identified the accused fourteen-year old by name nor caused any charges to be filed against him. Moreover, she was only seven-years old when the incident allegedly occurred. Thus, such evidence would hardly have been sufficient to suggest a pattern or practice of accusing men of sexually abusing her.

In *Oliveira*, this Court explored whether prior sexual-abuse accusations that were never shown to be false could be used to impeach the credibility of a complaining witness. There, the complaining witness, an eleven-year-old girl, testified that when she was eight-years old her mother's boyfriend had molested her sexually. *Oliveira*, 576 A.2d at 112. Government records also revealed that the child had accused two other men of sexually abusing her. *Id.* at 113. Relying upon the Rape Shield Statute,[2] the trial justice

2. This statute, G.L.1956 § 11–37–13, requires a defendant who is charged with the crime of sexual assault and who intends to introduce proof that the complaining witness has engaged in sexual activities with other persons, to give advance notice of that intention to the court and the attorney for the state. The notice must be given before the introduction of any evidence of that fact. It also must be given orally out of the hearing of spectators

precluded any use of these other accusations unless the child had recanted them or changed her testimony concerning those charges. *Id.* On appeal this Court reversed, holding that the trial justice misinterpreted the Rape Shield Statute. *Id.*

The purpose of the Rape Shield Statute, the Court stated, was to encourage victims to report crimes without fear of inviting unnecessary probing into the victim's sexual history. *Id.* (citing *State v. Lemon*, 456 A.2d 261, 264 (R.I.1983)). If, however, evidence of a victim's sexual history was found relevant (including challenges to the witness's credibility) after the defense made a specific offer of proof, then the evidence could be admitted. *Oliveira*, 576 A.2d at 113. Furthermore, relevance would not turn on the proven falsity of a previous similar accusation. *Id.* Finally, *Oliveira* held that even if the evidence might be probative of the witness's bias, the trial justice could exclude it if its probative value was outweighed by a prejudicial effect, such as confusion of the issues. *Id.* at 114 (citing R.I. R. Evid. 403).

In this case, the defense sought to cross-examine the twenty-seven-year old victim about a sexual assault that allegedly occurred more than twenty years ago, when she was a young child. As in *Oliveira*, the trial justice granted the state's motion *in limine* to preclude any use of the previous unprosecuted allegation to impeach the victim. But this situation is markedly different from the one in *Oliveira*.

First, the charges in *Oliveira* were similar to one or more of the charges that the accused was facing at trial. The charge at issue there and the two previous accusations all were instances of alleged childhood sexual abuse that had occurred before the child's ninth birthday. Here, on the other hand, defendant was charged with first- and second-degree sexual assault upon the adult victim. These charges were fundamentally different from the victim's teenage accusation against the paperboy because (1) adult sexual assault charges may involve the defense of consent whereas childhood sexual molestation charges do not, and (2) a thirteen-year old alleging, for the first time, an incident of sexual abuse that occurred some six years earlier when she was only seven-years old, after she has been prompted with a leading question by a doctor, is markedly different from a twenty-seven-year old immediately reporting to the police a sexual assault allegedly committed against her by her former husband.

Second, the allegations in *Oliveira* all occurred before the child's ninth birthday. At all times in *Oliveira* the Court was dealing with childhood sexual-abuse allegations from a young child who reported them shortly after they occurred. Here, the two alleged incidents of abuse occurred more than twenty years apart and the accusations themselves occurred many years apart under very different circumstances. Also, there is no record that the victim ever reiterated her teenage allegation against the paperboy when she was an adult. Thus, this allegation against the paperboy was too remote in time from any period relevant to the trial, and allowing the defendant to refer to it on cross-examination would have served only to confuse the jury. For these reasons, we conclude the trial justice did not err in keeping this evidence from the jury.

---

and, if the action is being tried by a jury, out of the hearing of the jurors. Upon receiving this notice, the court shall order the defendant to make a specific offer of the proof that he or she intends to introduce in support of this issue. The offer of proof, and all arguments relating to it, shall take place outside the hearing of spectators and jurors. The court shall then rule upon the admissibility of the evidence offered.

## C.

### Precluding Impeachment by Using Specific Instances of the Victim's Mental Health History

■ Finally, the defendant objects to the trial justice's precluding his use at trial of certain aspects of the victim's mental-health history to impeach her credibility. He insists that these references to certain specific instances from the victim's medical history would show her past mental instability and her tendency to react in dramatic, threatening, and vengeful ways because of the serious trauma and abuse she suffered as a child. The trial justice excluded this evidence because the medical records in question pertained to the complainant's treatment for depression at the age of fifteen. Thus, they predated the time of the alleged offense in this case by more than ten years and had no demonstrable bearing on the state of mind of the victim at any time relevant to this case or on any other issues pertaining to the allegations in question.

Last term, this Court ruled that mental-health records evincing a complainant's attempted suicide that were created some three years *after* the alleged sexual assault at issue were not admissible to impeach the witness's credibility because the records were irrelevant to her state of mind at the time of the alleged sexual assault at issue in the trial. *State v. Rice*, 755 A.2d 137, 152 (R.I.2000). Obviously, *Rice* involved the victim's later mental-health problems, whereas this case implicates previous mental-health issues. This factual distinction does not, however, prevent us from applying the same reasoning we used in *Rice* to affirm the trial justice's decision to bar such evidence to prevent jury confusion.

A colloquy that took place between defendant's counsel and the trial justice on this issue illustrates why the trial justice did not abuse his discretion in excluding this evidence. The defendant argued that the records in question would affect the jury's ability to assess the complainant's credibility as a witness. In response to this argument, the trial justice stated:

"Well, the medicals, so far as I'm aware, let's take the one going back to when she was fifteen years old and had some sort of suicide attempt or so-called suicidal ideation, as I do not believe those records indicate that she was some sort of a chronic or pathological liar or was delusional at that time. I mean, even if she were, we would have to have, I think, some indication that her delusions resurfaced periodically in the intervening years. But, that having been said, the records do not, unless you disabuse me of this by pointing me to a specific point in the records, the records do not show that she was running around coming up with fantasies or delusions of stating falsehoods, especially falsehoods accusing people of doing something harmful to her. I mean, is that not so—is there anything in the records that show that she was saying people were doing things harmful to her?"

The defendant's lawyer responded to the trial justice's question by stating "Judge, those records would not indicate that."

The test we articulated in *Rice* was to ask whether the proffered evidence would be relevant to the witness's state of mind when the incident in question allegedly occurred. Here, the mental health records about a teenage suicide attempt that the defense sought to use in cross examining the victim referred to an incident that was many years removed from any event at issue in this case. Evidence of severe mental illness suffered many years before the accusation at issue, like evidence of mental illness suffered years later, was not

shown to be relevant to the witness's state of mind when the alleged sexual assault occurred or when she testified at the trial—at least in the absence of any evidence linking these episodes to the victim's mental-health conditions at the time of the alleged rape, when she first accused the defendant, or when she was testifying at trial. Mere lack of treatment for this illness does not mean that the illness necessarily continued and persisted during any time relevant to this case. Likewise, evidence of the victim's visit to a mental health facility at age twenty one for treatment of depression was also irrelevant for the same reasons. This evidence, like the other excluded material, would have served only to confuse the jury and im-properly impeach the victim's character with specific instances of previous bad conduct. Thus, the trial justice did not abuse his discretion in precluding the defendant from using it to impeach the complaining witness's credibility.

## Conclusion

For these reasons, we deny the defendant's appeal and affirm the judgment of conviction.